**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN J. DAVIS, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Civil Action No. 15-3559 (ES) (JAD)** |
| **v.** | **OPINION** |
| **BANKERS LIFE AND CASUALTY COMPANY and ASMA NORRIS,** | |
| **Defendants.** | |

SALAS, DISTRICT JUDGE

Pending before the Court is Defendant Bankers Life and Casualty Company's ("Bankers" or "Defendant") motion to dismiss Plaintiff John J. Davis's ("Davis" or "Plaintiff") Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (D.E No. 45). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(d), 1446, and 1453. Having considered the submissions made in support of and in opposition to Defendant's motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). As set forth below, the Court GRANTS Defendant's motion to dismiss.

## I.     BACKGROUND

### A.  Factual Allegations[1]

At age seventy, Davis was solicited by Defendant Asma Norris ("Norris"), a Bankers "agent" and "producer," to purchase a life insurance policy from Bankers. (D.E. No 40, Second Amended Complaint ("SAC") ¶¶ 3, 5-6, 9).

---

[1]     The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

Norris first visited Davis on or about February 16, 2009.  (*Id.* ¶ 7).  At the time, Davis already owned two insurance policies: (i) a "long term care" policy written by Metropolitan Life Insurance Company ("Metropolitan Policy"); and (ii) a fully-paid "single premium deferred life" policy written by Peoples Benefit Life Insurance Company with $98,000 in coverage and a cash value of $64,354.67 ("Peoples Benefit Policy").  (*Id.* ¶¶ 10-11).

Norris convinced Davis to cancel his existing policies in favor of replacement policies issued by Bankers.  (*Id.* ¶¶ 12-16).  Davis reinstated his Metropolitan Policy after he received, reviewed, and rejected its Bankers replacement.  (*Id.* ¶ 22).  Davis did not, however, reinstate his Peoples Benefit Policy, so the replacement policy issued by Bankers went into effect on March 10, 2009 ("Bankers Policy").  (*Id.* ¶ 25, 46).

Davis alleges that Norris convinced him to cancel the Peoples Benefit Policy in favor of the Bankers Policy through false representations—specifically, that the Bankers Policy, with a $200,000 benefit, would be "fully paid by the payment of a single premium, to be funded by the cash surrender value of his existing Peoples Benefit Policy."  (*Id.* ¶ 16).  Contrary to Norris's alleged representation, however, the Bankers Policy required substantial annual premium payments that started at $6,102.  (*Id.* ¶¶ 11, 18, 28, 44).  In fact, the $64,354.67 transfer to Bankers only paid the initial Bankers Policy premiums.  (*Id.* ¶¶ 11, 18, 28, 44).  Thus, Norris (who never showed Davis a Buyer's Guide, policy illustration or summary[2]) concealed from Davis that he would have to pay additional premiums to maintain the Bankers Policy once the initial payment was exhausted.  (*Id.* ¶¶ 17-18).  These annual premiums, subject to steep increases each year, made the Bankers Policy unaffordable and unsuitable to Davis's needs.  (*Id.* ¶¶ 44-45).  When asked about the additional premiums, Norris told Davis to ignore repeated premium bills because they were sent as an administrative mistake.  (*Id.* ¶¶ 28-33).

---

[2]     Pursuant to N.J.A.C. 11:4-11.3(a)(2), an insurer must provide prospective purchasers with a policy summary. This summary must, under N.J.A.C. 11:4-11.2, include the annual premium for the policy.

Although Davis purchased the Bankers Policy on March 10, 2009, he did not receive a copy of it until August 15, 2014, after repeated calls to Bankers and in alleged violation of certain insurance regulations. (*Id.* ¶¶ 33-40). Upon review of the written policy, Davis became aware of the additional annual premiums. (*Id.* ¶ 41). So, on September 20, 2014, Davis (through his attorney) wrote to Bankers, "advising that the policy did not conform to the policy which Davis had been promised by Norris, and demand[ing] a conforming policy." (*Id.* ¶ 42).

### B. Procedural History

Davis initiated his suit against Bankers in Morris County Superior Court (Law Division), New Jersey. (*See* D.E. No. 1-1). His Amended Complaint, filed on April 26, 2015, also included allegations against Nathan Richardson and CNO Financial Group, Inc. (*Id.*). Bankers, together with Nathan Richardson (Norris's alleged supervisor) and CNO Financial Group, Inc. (collectively, "Defendants"), removed the case to this Court. (D.E. No. 1). Defendants subsequently filed a motion to dismiss. (D.E. Nos. 16, 17). On March 3, 2016, following oral argument, the Court granted Defendants' motion, but permitted Davis to file an amended complaint within thirty days. (D.E. No. 32).

On April 18, 2016, Davis filed the SAC against Defendants Bankers and Norris only. (*See* SAC). In it, he alleges (i) breach of contract (Count I); (ii) fraud and fraudulent concealment (Count II); (iii) violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count III); (iv) consumer fraud (Count IV); (v) breach of fiduciary duty (Count V); (vi) negligent supervision and retention (Count VI); and (vii) a claim under a quasi-contract theory of unjust enrichment (Count VII). (*Id.* ¶¶ 86-144).

On June 1, 2016, Bankers moved to dismiss Davis's SAC under Federal Rule of Civil Procedure 12(b)(6), which Davis opposed on July 19, 2016. (D.E. No. 45-1, Brief in Support of Defendant's Motion to Dismiss ("Def. Mov. Br."); D.E. No. 52, Plaintiff's Response to Motion ("Pl.

Opp. Br.")).  On September 15, 2016, Bankers replied to Davis's opposition.  (D.E. No. 58, Reply Memorandum of Law in Further Support of Motion to Dismiss the Second Amended Complaint ("Def. Reply Br.")).  The motion is now ripe for adjudication.

## II.    LEGAL STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim,

---

[3]        Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.").

Indeed, on a motion to dismiss, a district court typically does not consider materials extraneous to the complaint and exhibits attached thereto; when a court does so, however, "it must convert the motion to dismiss into a motion for summary judgment . . . and provide all parties with a reasonable opportunity to present all material pertinent to the motion."  *See Pero v. Int'l Bus. Machs. Corp.*, No. 12-07484, 2014 WL 37233, at *2 (Jan. 2, 2014) (citing Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

But a limited exception to conversion exists for "document[s] *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.  "The rationale behind the exception is that, when a complaint refers to or relies on the document, 'the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence i[s] greatly diminished.'"  *Pero*, 2014 WL 37233, at *2 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994)).  When a document is "integral to or explicitly relied upon in the complaint," it forms the basis of a claim. *Jeffrey Rapaport M.D., P.A. v. Robins S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012).

"'The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document.'"  *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426). "When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Id.*

Finally, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement concerning allegations of fraud or mistake.  *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No.

13-6272, 2015 WL 7871165, at *2-3 (D.N.J. Dec. 4, 2015).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). A plaintiff may satisfy Rule 9(b) by pleading the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004).  "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.*

Plaintiffs "must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud." *Jubelt v. United N. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227, at *9 (D.N.J. June 30, 2015).  "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 492 (D.N.J. 1998) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

## III.   DISCUSSION

### A.  Count I: Breach of Contract

#### i.  *The Parties' Arguments*

In Count I, Plaintiff alleges breach of an oral agreement that he entered into with Norris on March 10, 2009, during which the parties agreed that "Davis would cancel his existing policy with Peoples Benefit, and apply the $64,354.67 cash value of that policy to a new Bankers Life policy . . . which . . . would be wholly funded by a single premium payment in the amount of the cash surrender value of his Peoples Benefit policy."  (SAC ¶ 87).

Defendant raises three arguments to support dismissal of Count I.  (Def. Mov. Br. at 5-12). First, it argues that "Norris expressly had no authority to enter into an oral contract or any other contract with Davis, and Davis was fully aware of that" in light of Acknowledgement 15(D) in Davis's signed application (which states that "[n]o agent . . . is authorized to . . . make or modify contracts"

6

on Bankers' behalf). (*Id.* at 5-6). Next, it avers that "Davis was aware that he was submitting only an application for insurance and that his contractual relationship with Bankers would be governed by the written Policy" as provided in Acknowledgement 15(E) (which states, "[a]ny insurance policy issued as a result of this application shall, together with the application, constitute a single and entire contract of insurance"). (*Id.* at 7). Finally, it asserts that Davis's claim is barred by the parol evidence rule. (*Id.* at 7-12).

Plaintiff counters, in part, that he has stated a claim for "breach of contract and fraud" and lists a litany of cases in support of his position. (Pl. Opp. Br. at 27-34). He notes that the Bankers Policy was not delivered to him for more than five years—in violation of New Jersey law, which requires the policy to be provided within ten days—after which he read the policy and complained to Bankers. (*Id.* at 34). "Had everything gone as it was supposed to, Davis would have timely received the policy, read it, realized it did not conform to what had been represented to him, and may have been able to reinstate the Peoples policy, or at least replace the coverage." (*Id.*). By the time he received the Bankers Policy, however, he could not reinstate his previous Peoples Benefit Policy nor obtain comparable coverage elsewhere. (*Id.*).

### ii.  *Analysis*

Under New Jersey law, a plaintiff alleging breach of contract must plead "(1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 444-45 (D.N.J. 2012).

As to the first prong (the existence of a valid contract) the parties disagree over which alleged contract controls—the 2009 oral agreement between Davis and Norris or the 2014 written policy mailed to Davis years after his discussion with Norris. To resolve the pending motion, the Court must therefore determine which alleged contract is operative.

In the context of insurance contracts, insurance companies are required to provide insureds a copy of their policy. *Edwards v. Prudential Prop. & Cas. Co.*, 814 A.2d 1115, 1119-20 (N.J. Super. Ct. App. Div.), *cert. denied*, 822 A.2d 608 (N.J. 2003). "When an insured person receives an insurance policy, that person is 'under a duty to examine his insurance policies; if the terms disclosed by such an examination are inconsistent with his desires, he is required to notify the company of the inconsistencies and of his refusal to accept the policy in the proffered condition.'" *Andrea v. Metro. Life Ins. Co.*, No. 00-911, 2000 WL 35361960, at *3 (D.N.J. Aug. 14, 2000) (quoting *Martinez v. John Hancock Mut. Life Ins. Co.,* 145 N.J. Super. 301, 310 (App. Div. 1976)). A company providing replacement life insurance in New Jersey "shall provide to the policy or contract owner notice of the right to return the policy within 30 days [i.e., the free-look period]." N.J.A.C. 11:4-2.4(a)(5).

Here, Plaintiff alleges breach of an oral agreement with Norris on March 10, 2009. (SAC ¶¶ 87-93). But he acknowledges, however, the existence of a written policy, which he received on approximately August 15, 2014. (SAC ¶ 40). Under New Jersey law, Bankers was required to provide Davis with a written policy within ten days of the alleged agreement. N.J.A.C. 11:17A-4.6; *Edwards*, 814 A.2d at 1119-20. It failed to do so, providing it instead on August 15, 2014 (after five years and upon his repeated requests). (SAC ¶¶ 28-40). Nevertheless, upon receipt, Davis had thirty days to return the Bankers Policy (until September 15, 2015). N.J.A.C. 11:4-2.4(a)(5); *Andrea*, 2000 WL 35361960, at *3 (requiring plaintiff "to notify the company of the inconsistencies and of his refusal to accept the policy in the proffered condition").

Plaintiff reviewed the Bankers Policy upon receipt. (SAC ¶ 41; *see also* Pl. Opp. Br. at 34). And he concedes that he "had the policy for about 45 days before complaining to Bankers." (Pl. Opp. Br. at 33; *see also* SAC ¶ 42). But as Defendant points out, "Davis could return the Policy within thirty days for a full refund, or keep the Policy and be bound by it . . . there is no third path." (Def. Mov. Br. at 11); *see, e.g.*, *C&C Family Trust 04/04/05 v. AXA Equitable Life Ins. Co.*, 654 F. App'x

429, 434 (11th Cir. 2016) (holding that "by seeking reformation of the contract rather than rescission, the [plaintiff] affirmed the contract"). Thus, by failing to reject the Bankers Policy within the timeframe required by law, the Bankers Policy became effective.[4] *See Park v. Metropolitan Life Ins. Co.*, 421 F. App'x 197, 199 (3d Cir. 2011) (applying New Jersey law and stating that "the policy itself contains a 10-day 'free look' provision allowing him to review . . . and return the policy . . . [the insured] did not return the policy and it became effective"); *Ross v. Metropolitan Life Ins. Co.*, 297 F. App'x 187, 189 (3d Cir. 2008) ("Appellants did not return the issued policies within the 10-day 'free look' period. The policies therefore went into effect."). Consequently, the Court finds that the Bankers Policy is effective, and thus the operative written contract.

Given that the Bankers Policy is the operative written contract, the Court must now determine whether Plaintiff can introduce extrinsic evidence contradicting its terms. The Court notes that Plaintiff does not assert a breach of the written contract (i.e., the Bankers Policy). Rather, he argues that the Bankers Policy did "not conform to the policy that Norris had represented he would get." (Pl. Opp. Br. at 34; *see also* SAC ¶ 42).

Generally, the parol evidence rule prohibits the introduction of evidence of oral promises to vary the terms of an integrated written agreement. *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991). "Introduction of extrinsic evidence to prove fraud in the inducement, however, is a well recognized exception to the parole evidence rule." *Id.* But the fraud-in-the-inducement exception has limits: "alleged oral misrepresentations, being contradictory of the undertakings expressly dealt with by the writings, are not effectual in that circumstance to avoid the obligation knowingly assumed." *RNC Sys., Inc.*, 861 F. Supp. 2d at 454. "The general rule is clear

---

[4] Plaintiff argues—in a footnote without citation—that the "30 day 'free look' provision in N.J.A.C. 11:4-2.4(a)(5) cannot be used by an insurer as a shield from liability for its bad conduct." (Pl. Opp. Br. at 34). Plaintiff has presented no law in support of his argument, and the Court's independent research has not revealed any authority to support Plaintiff's position.

that a parol agreement which is in terms contradictory of the express words of a contemporaneous or subsequent written contract, properly interpreted, necessarily is ineffectual and evidence of it inadmissible, whether the parol agreement be called collateral or not." *Id.* Put simply, "[a]lthough extrinsic evidence can be introduced to prove fraud in the inducement, . . . extrinsic evidence cannot be used to prove fraud if the alleged misrepresentations are contradicted by the express terms of the contract." *Andrea*, 2000 WL 35361960, at *4.

Plaintiff's allegations in Count I are undoubtedly troubling. But the law is clear: extrinsic evidence of an oral agreement with Norris cannot be used to prove fraud if the alleged misrepresentations are contradicted by the express terms of the policy. *See id.* Plaintiff's opposition summarizes a litany of cases (with few arguments) that are distinguishable from his allegations here. For example, he relies on *Volker v. Connecticut Fire Ins. Co.*, for the proposition that the "Court found that the [oral agreement] was not displaced by the contract because what was in effect a new contract was not communicated to the insured." (Pl. Opp. Br. at 28) (citing 22 N.J. Super. 314, 323 (App. Div. 152)). Plaintiff then notes that *Volker* "distinguished cases cited by the insurer to the effect that the insured had a duty to read the policy." (*Id.*). Yet, here, Davis does not argue that the 2009 oral agreement was a valid contract that was replaced by the 2014 Bankers Policy. Nor does he dispute that the policy was communicated to him (albeit late) and that he read the policy.

And Plaintiff's reliance on *Harr v. Allstate Ins. Co.*, is inapposite. (*Id.* at 28-29) (citing 54 N.J. 287 (1969)). There, the court barred the insurer from denying coverage because it found that the written policy was ambiguous on the topic at issue (whether it covered water damage), noting that it was "confusing and abstruse to the average person" "especially with respect to water damage." *Harr*, 54 N.J. at 294-97, 309. But there is nothing ambiguous or confusing about Davis's Bankers Policy here. To the contrary, when Davis read the policy, "he realized it did not conform to the policy that Norris had represented he would get." (Pl. Opp. Br. at 34; *see also* SAC ¶ 42). The Court finds that

10

the pleaded facts—after an opportunity to amend—do not warrant an exception to the parol evidence rule.  Accordingly, Count I is dismissed *with prejudice.*

### B.  Count II: Fraud and Fraudulent Concealment[5]

#### i.  *The Parties' Arguments*

Bankers argues that Davis's fraud claims in Count II are legally insufficient because he cannot show reasonable reliance nor can he show any misstatement.  (Def. Mov. Br. at 12-17; Def. Reply Br. at 3-7).   Plaintiff's response to these arguments is identical to his response in Count I—that he has stated a claim for "breach of contract and fraud" and lists a litany of cases in support of his position.  (Pl. Opp. Br. at 27-34); *supra* at 7-8.

#### ii.  *Analysis*

Under New Jersey law, a plaintiff alleging fraud must plead "i) a material representation of fact, ii) knowledge on the speaker's part that the statement is false, iii) an intent that the other rely, iv) actual and reasonable reliance, and v) resulting damages."  *In re Nw. Mut. Life Ins. Co. Sales Practices Litig.*, 70 F. Supp. 2d 466, 486 (D.N.J. 1999), *aff'd*, 259 F.3d 717 (3d Cir. 2001) (citing *Foont-Freedenfeld Corp. v. Electro-Protective Corp.*, 314 A.2d 69, 71 (N.J. Super. Ct. App. Div. 1973), *aff'd*, 314 A.2d 68 (N.J. 1974)).

Assuming that Davis can establish four of the five elements of a fraud claim, the Court finds that Davis cannot set forth sufficient facts for the Court to infer the remaining element—reasonable

---

[5]     Neither party addresses Plaintiff's fraudulent concealment claim.  Indeed, it is unclear whether Plaintiff is still pursuing such a claim (other than including it in the Count II heading).  (*See* SAC ¶¶ 94-103).  The Court nevertheless notes that fraudulent concealment is an "equitable doctrine that is read into every federal statute of limitations," and thus tolls the limitations period "where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it."  *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 508-09 (3d Cir. 2006).  To benefit from the equitable tolling doctrine, Plaintiff must prove: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts."  *Id.* at 509.  Here, there are no allegations that Defendant's conduct prevented Plaintiff from recognizing the validity of his claim within the limitations period, nor does Defendant assert a statute-of-limitations defense.  As such, the Court finds that Plaintiff's fraudulent concealment claim is moot.

reliance.  Davis claims that he "reasonably relied" on Norris's statement that was contradictory to the effective Bankers Policy[6] (namely, "that the Bankers Life policy with a death benefit of $200,000 would be fully funded by a payment of a single premium in the amount of the cash surrender value of his Peoples Benefit policy").  (SAC ¶¶ 94, 98, 100).  The law is clear, however, that reasonable reliance on a prior oral representation cannot be established in the face of clear contradictory language in an insurance policy.  *See, e.g.*, *In re Nw. Mut.*, 70 F. Supp. 2d at 488 (finding no reasonable reliance where the alleged fraud was based on pre-contractual oral representations of the insurance agent); *Andrea*, 2000 WL 35361960, at *3-4 (granting motion to dismiss fraud claim where plaintiff attempted to sue on ground that he reasonably relied on pre-contractual representations that were clearly contradicted by the policy).  Despite an opportunity to amend, Plaintiff again fails to establish the requisite element of reasonable reliance, and thus fails to allege fraud.  Accordingly, the Court dismisses Plaintiff's allegations against Bankers in Count II *with prejudice*.[7]

### C.  Count III: New Jersey Consumer Fraud Act (Based on Norris's Conduct)

#### i.  *The Parties' Arguments*

Bankers avers that Davis's NJCFA claim based on Norris's conduct is insufficient because, as a learned professional, Norris is exempt from liability under the NJCFA.  (Def. Mov. Br. at 17-20).  And, because the exemption would be meaningless if Norris was immunized from liability under the NJCFA but Bankers (as her employer) could still liable for the same alleged conduct, Bankers is also exempt.  (*Id.*).

Notably, "[f]or purposes of this motion only, Davis assumes, but does not concede, that the learned profession exemption applies to insurance producers like Norris."  (Pl. Opp. Br. at 4 n.1).

---

[6]       The Court has already determined that the Bankers Policy is effective.  *See supra* at 8-10.

[7]       Because the Court dismisses Count II on the grounds that Plaintiff cannot establish the requisite element of reasonable reliance, it need not address Bankers' argument that Plaintiff cannot show any misstatement.  (Def. Mov. Br. at 12-17; Def. Reply Br. at 3-7).

But, Davis argues, that exemption does not extend to insurers, like Bankers, whose policies were sold. (*Id.* at 4). If the Court accepts Bankers' argument, Davis notes, it "would immunize a large swath of the insurance industry from [NJCFA] liability," contrary to the New Jersey Supreme Court's intent. (*Id.* at 8).

### ii. *Analysis*

To state a claim under the NJCFA, a plaintiff must allege sufficient facts to demonstrate (i) that the defendant committed an "unlawful practice" as defined under the NJCFA; (ii) an ascertainable loss; and (iii) that the unlawful conduct caused the ascertainable loss. *See Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 504 (D.N.J. 2009); *Zaman v. Felton*, 98 A.3d 503, 516 (N.J. 2014).

Here, Bankers does not seem to dispute that Davis has pleaded sufficient facts to sustain an NJCFA claim against Norris. Bankers argues, however, that "Norris is exempt from liability under the NJCFA." (Def. Mov. Br. at 18). And Davis assumes (but does not concede), for the purposes of this motion, that the learned profession exemption applies to insurance producers like Norris.[8] (Pl. Opp. Br. at 4).

So, as a threshold inquiry, the Court must determine if (in light of Norris's assumed exemption) Bankers can nevertheless be vicariously liable under the NJCFA for allegations predicated solely on Norris's conduct.[9] Although no binding authority has squarely addressed this

---

[8]       "It is well-settled under New Jersey law that learned professionals and semi-professionals are not liable under the [NJCFA] with respect to rendering professional services." *Chassen v. Fid. Nat'l Fin.*, No. 09-291, 2009 WL 4508581, at *8 (D.N.J. Nov. 16, 2009) (citing *Macedo v. Dello Russo*, 840 A.2d 238, 241-42 (N.J. 2004)). That exemption stems from the actor's testing, licensing, and regulations within their professionalized practice. *Id.* (citing *Plemmons v. Blue Chip Ins. Servs.*, 904 A.2d 825, 831-32 (N.J. Super. Ct. App. Div. 2008)).

[9]       For the purposes of resolving Bankers' motion to dismiss Count III, the Court need not address whether Bankers falls within the purview of the NJCFA, as that issue is not raised in support of dismissal of this claim. Rather, the only issue before the Court is whether the insurance company can be *vicariously liable* for the conduct of its exempt learned professional.

        Bankers notes, and the Court agrees, that "[i]nsurance companies that directly market products to the public . . . are not entitled to the learned professionals exemption because no learned professionals are involved." (Def. Mov. Br. at 19 n.8; Def. Reply Br. at 10 n.5).; *see also Call v. Czaplicki*, No. 09-6561, 2010 WL 3724275, at *9 (D.N.J. Sept. 16,

issue, it appears that the weight of authority supports Defendant's position.  *See, e.g.*, *Call*, 2011 WL 2532712, at *7-10 (dismissing plaintiffs' "NJCFA claim against [employer] based on its liability for [exempt employees' conduct]" and denying plaintiffs' motion to amend NJCFA claim against employer because "amendment is futile"); *Chassen*, 2009 WL 4508581, at *9 (dismissing plaintiff's NJCFA claim against exempt learned professionals and summarily dismissing NJCFA claims against employer); *Macedo*, 840 A.2d at 242 (dismissing NJCFA allegation against exempt learned professional and "the corporate entities he created" because allegations relating to the "rendering of professional services are insulated from the CFA"); *Arons v. Rite Aid Corp.*, No. 4641-03, 2005 WL 975462, at *13 (N.J. Super. Ct. Law Div. Mar. 23, 2005) (dismissing plaintiff's NJCFA claim against pharmacy, as employer of exempt pharmacist, because pharmacy "is entitled to the same protection from remedies under the NJCFA").

Moreover, Plaintiff does not provide the Court with any authority to support his claim that an employer can be vicariously liable for the conduct of exempt employees.  Plaintiff's reliance on *Haskins v. First American Title Ins. Co.* and *Estate of Parr v. Buontempo Ins. Servs.*, for example, is inapposite, because those cases do not involve allegations of vicarious liability.  (*See* Pl. Opp. Br. at 4-6) (citing No. 10-5044, 2011 WL 5080339 (D.N.J. Oct. 25, 2011) and No. 2500-06, 2006 WL 2620504 (N.J. Super. Ct. App. Div. Sept. 8, 2006)).  And the remainder of Plaintiff's authority involves legislative grants of statutory immunity, rather than the judicially-crafted learned professional exemption applicable here.  (*See id.* at 6-7).[10]  Although the Court recognizes that the

---

2010) ("The 'learned professionals' exemption applies only to insurance brokers and not insurance companies."); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 696 A.2d 546, 551 (N.J. 1997) (finding that the NJCFA applies to "the sale of insurance policies as goods and services that are marketed to consumers").

[10]      *See, e.g.*, *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1374-75 (3d Cir. 1993) (holding that immunity under Pennsylvania's Good Samaritan statute did not apply to corporation because it did not possess the certifications that the statute required for the immunity); *Murray v. Plainfield Rescue Squad*, 210 N.J. 581, 593-94 (2012) (holding rescue squad may be liable even though individual squad member had statutory immunity); *Volb v. G.E. Capital Corp.*, 139 N.J. 110, 117-19 (1995) (holding individual's statutory immunity does not extend to employer); *Whitfield v. Bonanno Real Estate*

NJCFA should be read expansively,[11] it declines Plaintiff's invitation to narrow the learned professional exemption absent any authority to support such action.  The Court therefore dismisses Count III against Bankers *with prejudice*.

### D.  Count IV: New Jersey Consumer Fraud Act (Based on Bankers' Conduct)

#### i.  The Parties' Arguments

Bankers argues that the Court should dismiss Count IV of Davis's SAC (based on Bankers' conduct) because an NJCFA claim cannot be predicated on an alleged violation of insurance regulations.  (Def. Mov. Br. at 21-23).  Specifically, it asserts that a regulatory violation is actionable under the NJCFA only if promulgated by the Attorney General under the NJCFA.  (*Id.* at 22).  The regulations that form the basis for Davis's allegations here are enacted by a different agency under a different statute.  (*Id.* at 23).  So, according to Bankers, Count IV should be dismissed.

Predictably, Davis counters that "Bankers takes too narrow a view of the [NJCFA] and fails to address cases that have recognized claims based on violations of statutes or regulations other than those adopted pursuant to the [NJCFA]."  (Pl. Opp. Br. at 8).  Davis further notes that "[a]llowing a [NJCFA] claim premised on an insurance statute or regulation violation advances the objective of both the [NJCFA] and the insurance statutes and regulations."  (*Id.* at 12).

#### ii.  Analysis

To state a claim under the NJCFA, Davis must first allege sufficient facts to demonstrate that Bankers committed an "unlawful practice."[12]  *Bonnieview*, 655 F. Supp. 2d at 504; *see supra* at 14.

---

*Grp.*, 419 N.J. Super. 547, 555-56 (App. Div. 2011) (same); and *Gardner v. Rosecliff Realty Co.*, 41 N.J. Super. 1, 7 (App. Div. 1956) (same).

[11]    "The [NJCFA] has been amended over the years with the intent of giving New Jersey one of the strongest consumer protection laws in the nation.  To that end . . . the Act should be construed liberally in favor of consumers." *Estate of Parr*, 2006 WL 2620504, at *3 (citing *Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 460 (N.J. 1994)).

[12]    Under the NJCFA, an "unlawful practice" includes:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with

"Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations.  The first two are found in the language of N.J.S.A. 56:8-2, and the third is based on regulations enacted under N.J.S.A. 56:8-4."  *Cox*, 647 A.2d at 462; *see also Perez v. Professionally Green, LLC*, 73 A.3d 452, 460-61 (N.J. 2013) (affirming *Cox* and analyzing NJCFA claim predicated upon regulation promulgated pursuant to N.J.S.A. 56:8–4).

Here, David concedes that his allegations in Count IV are predicated on Bankers' violation of a regulation not promulgated by the NJCFA (i.e., N.J.S.A. 56:8-4).  (Pl. Opp. Br. at 8-12).  But, as Bankers rightly notes, "[n]ot every regulatory violation will give rise to NJCFA liability."  (Def. Mov. Br. at 21).  Rather, "[o]nly violation of regulations enacted under N.J.S.A. 56:8–4 . . . can serve as a basis for a claim of an unlawful practice under the NJCFA."  *Mason v. Coca-Cola Co.*, No. 09-0220, 2010 WL 2674445, at *6 n.4 (D.N.J. June 30, 2010); *see also Stoecker v. Echevarria*, 975 A.2d 975, 991 (N.J. Super. Ct. App. Div. 2009) (finding that alleged regulatory violation does not provide a basis for a claim under the NJCFA because "the regulation was not adopted by the Attorney General pursuant to the [NJCFA]").  The Court declines Plaintiff's invitation to expand the scope of regulatory violations that give rise to NJCFA liability because it agrees with Defendant that only regulations enacted under N.J.S.A. 56:8–4 provide a basis for a claim under the NJCFA.  As such, Count IV of the SCA is dismissed *with prejudice*.[13]

---

the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

N.J.S.A. 56:8-2.

[13]     Bankers also argues that "Count IV does not come close to satisfying Rule 9(b)'s heightened pleading requirements."  (Def. Mov. Br. at 23-26).  It notes that "[Davis] has merely pleaded conclusions—not facts—and provided no 'information' to support a reasonable 'belief' that Bankers has carried out any fraud."  (*Id.* at 25).  Davis counters, however, that "Rule 9 does not apply to Davis' [NJCFA] claim against Bankers, because it does not charge Bankers with fraud."  (Pl. Opp. Br. at 13).  The Court need not address Bankers' additional argument in light of its dismissal of Count IV on other grounds.

### E.  Count V: Breach of Fiduciary Duty

#### i.  *The Parties' Arguments*

Defendant argues that Count V of Davis's SCA is legally insufficient because insurance agents, like Norris, owe a fiduciary duty to the insurance company, not the insured.  (Def. Mov. Br. at 26-28).  Further, Defendant preemptively argues that N.J.A.C. § 11:17A-4.10—a New Jersey Department of Banking and Insurance ("DOBI") regulation providing that an insurance producer "acts in a fiduciary capacity in the conduct of his or her insurance business"—does not specify to whom the fiduciary duty is owed.  (*Id.* at 28).

Plaintiff counters that Norris owed a fiduciary duty to Davis under both DOBI regulations and common law.  (Pl. Opp. Br. at 20-23).

#### ii.  *Analysis*

To plead a breach of fiduciary duty, a plaintiff must allege: "(1) a fiduciary relationship comprised of two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship, and (2) a violation of that trust."  *Wiatt v. Winston & Strawn, LLP*, No. 10-6608, 2011 WL 2559567, at *9 (D.N.J. June 27, 2011) (citing *F.G. v. MacDonell*, 696 A.2d 697 (N.J. 1997).

"It is well-established that an insurance agent owes a fiduciary duty to the insurance company while an insurance broker owes a duty directly to his or her principal, the insured.  Because of this difference, the insurer can be held responsible for the negligence of the insurer's agent, while a broker is only liable to the insured and may not obtain indemnification from the insurer."  *Nova Bank v. Samuel D. Schenker, L.L.C.*, No. 0553-13, 2015 WL 751529, at *2 (N.J. Super. Ct. App. Div. Feb. 24, 2015) (citing *Weinisch v. Sawyer*, 587 A.2d 615, 618 (N.J. 1991)).

Here, Davis alleges that Norris is Bankers' "agent" and "insurance producer."  (SAC ¶ 3).  Notably, he does not allege that Norris was his broker.  But the law is clear, however, that although

both agents and brokers owe insureds a duty "to exercise good faith and reasonable skill" in advising them, the agent only "owes a fiduciary duty to the insurance company . . . not to the insured." *In re Nw Mut.*, 70 F. Supp. 2d at 489.  To support his position that when an insurance agent sells his or her insurer's policies to the public, the agent owes a fiduciary duty to the purchaser (as opposed to the insurance company), Plaintiff relies on factually distinguishable cases that analyze claims against independent brokers.[14]  And the administrative decisions that Plaintiff cites are unpersuasive.  Indeed, as Defendant points out, most of those decisions involve allegations against insurance producers for, among other things, stealing or misappropriating funds that insurers or insureds entrusted to them.[15]  Having reviewed Plaintiff's cited authority, the Court finds that Plaintiff has failed to provide ample support for his position that Norris, Bankers' agent, owed a fiduciary duty to Davis.  Accordingly, the Court will not depart from the well-established rule that an insurance agent owes a fiduciary duty to the insurance company and not to the purchaser.  *See In re Nw Mut.*, 70 F. Supp. 2d at 489.  As such, Count V of the SCA is dismissed *with prejudice*.

---

[14]   *See, e.g.*, *Thomas v. Dion*, No. 8791-11, 2015 WL 6394443, at *6 (N.J. Super. Ct. App. Div. Oct. 23, 2015) (plaintiff suing their independent broker); *Duffy v. Certain Underwriters at Lloyd's of London Subscribing to Policy No. 09ASC185004*, No. 5797-11, 2014 WL 3557861, at *1, *5-6 (N.J. Super. Ct. App. Div. July 21, 2014) (same); *Triarsi v. BSC Group Servs., LLC*, 422 N.J. Super. 104, 109 (App. Div. 2011) (same); *Plemmons*, 904 A.2d at 833-34 (same); *Walker v. Atlantic Chrysler Plymouth, Inc.*, 216 N.J. Super. 255, 257, 259-60 (App. Div. 1987) (same); *Sobotor v. Prudential Prop. & Cas. Co.*, 200 N.J. Super. 333, 336-37, 341 (App. Div. 1984) (same).

[15]   *See, e.g.*, *Comm'r Kenneth E. Kobylowski, Petitioner*, No. 10377-1, 2015 WL 8639529, at *1-2 (N.J. Adm. Sept. 15, 2015) (producers disciplined for multiple instances of misappropriating premiums and other funds); *Comm'r of Banking & Ins., Petitioner*, No. 3857-06, 2009 WL 6435350, at *13-14 (N.J. Adm. Dec. 2009) (producers disciplined for misappropriating premiums); *Steven M. Goldman Comm'r, Dep't of Banking & Ins., Petitioner*, Nos. 03451-07 & 03452-07, 2008 WL 4712770, at *1 (N.J. Adm. Sept. 25, 2008) (producers disciplined for stealing insurer's premiums); *Holly C. Bakke Comm'r, Petitioner*, No. 428, 2006 WL 1360169, at *1 (N.J. Adm. May 9, 2006) (producers disciplined for making fraudulent disbursements and passing bad checks); *Holly C. Bakke, Comm'r, Petitioner*, No. 11, 2006 WL 2468084, at *1 (N.J. Adm. May 8, 2006) (producers disciplined for failing to remit premiums to insurers, failing to refund premiums to customers and issuing false insurance documents, among other things); *Holly C. Bakke Comm'r, Petitioner*, No. 85-05, 2005 WL 3671388, at *7 (N.J. Adm. Dec. 16, 2005) (producers disciplined for taking insureds' premium payments and not forwarding them to insurers and issuing insureds certificates of insurance for coverages not bound).

### F.  Count VI: Negligent Supervision and Retention

#### i.  *The Parties' Arguments*

Defendant posits three arguments to support dismissal of Count VI.  *First*, it argues that these torts do not apply to independent contractors, such as Norris.  (Def. Mov. Br. at 29).  *Second*, even if Norris was considered an employee, Defendant notes, these claims would fail because (i) the alleged misconduct occurred within the scope of her employment and thus Bankers can only be held liable under the doctrine of *respondeat superior*; and (ii) these torts apply only to violent or aggressive employees who cause physical harm (unlike Norris here).  (*Id.* at 29-31).  *Third*, Defendant asserts that Davis's claim is barred by the economic loss doctrine.  (*Id.* at 32-33).

Davis rightly responds that "whether Norris was an independent contractor cannot be decided on a motion to dismiss."  (Pl. Opp. Br. at 13).  He further argues that Bankers had a duty to exercise due care in its supervision of its agent and that he can simultaneously maintain negligent supervision and vicarious liability claims.  (*Id.* at 14-19).  And, according to Davis, liability for negligent supervision and retention is not limited to violent employees and risk of serious physical harm.  (*Id.* at 19-20).  Finally, Davis contends that the economic loss doctrine does not bar his tort claims.  (*Id.* at 23-27).

#### ii.  *Analysis*

"An employer is potentially liable to a third party whose injury was proximately caused by the employer's negligence in hiring or retaining an employee who is unfit for the job."  *Maddox v. City of Newark*, 50 F. Supp. 3d 606, 636 (D.N.J. 2014) (citing *Di Cosala v. Kay*, 450 A.2d 508, 514 (N.J. 1982)).  The cause of action has two elements: (i) that the employer knew or had reason to know of the "particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons," and (ii) that

through the employer's negligence, the employee's "incompetence, unfitness, or dangerous characteristics proximately caused the injury." *Id.*

*First*, the Court is unpersuaded by Defendant's argument that Count VI is legally insufficient because these torts do not apply to independent contractors, such as Norris. (Def. Mov. Br. at 29). As Davis correctly responds, the Court cannot determine that Norris was an independent contractor at this early stage.[16] (Pl. Opp. Br. at 13-14); *KM Sys., Inc. v. United States*, No. 02-4567, 2004 WL 1386371, at *7 (D.N.J. May 10, 2004) (holding that "the determination of whether [defendant's agents] were independent contractors under the common law test would be a highly factual inquiry"). Indeed, Plaintiff nowhere alleges that Norris was an independent contractor; rather, he repeatedly describes Norris as an "agent" or "producer." (*See, e.g.*, SAC ¶¶ 3, 78, 87). Consequently, Defendant's first argument fails.

*Second*, the Court is also unpersuaded by Defendant's argument, relying on *Di Cosala*, that Count VI is legally insufficient because "the torts of negligent supervision and retention are applicable *only* when the servant is acting *outside* the scope of employment." (Def. Mov. Br. at 30) (citing *Di Cosala*, 450 A.2d at 515 (emphasis in original)). *Di Cosala* fails to put forth the hard and fast rule that Defendant alleges. Rather than expressly limiting negligent supervision or retention to acts that fall outside of the scope of employment, as Defendant contends, *Di Cosala* notes only "that the employee conduct which may form the basis of the cause of action *need not* be within the scope of employment." *Di Cosala*, 450 A.2d at 516. And while the court there describes "an intentional tort" as "an action almost invariably outside the scope of employment," it nowhere limits these torts only to those actions. *Id.* at 515. To the contrary, it holds merely that "the scope of employment limitation

---

[16]   New Jersey "courts have utilized two different but related tests to distinguish employees from independent contractors: (1) the control test, which is grounded in the common law master-servant relationship; and (2) the relative nature of the work test, which is used in various situations in which the control test does not emerge as the dispositive factor." *Estate of Kotsovska ex rel. Kotsovska v. Liebman*, 116 A.3d 1, 15 (N.J. 2015).

on liability which is a part of the *respondeat superior* doctrine is not implicit in the wrong of negligent hiring." *Id.*

Moreover, this District has recognized that a claim for negligent supervision may be predicated on a tort committed "*in* or outside the scope of his employment." *Wiatt*, 2011 WL 2559567, at *10; *see also Worrall v. City of Atl. City*, No. 11-3750, 2014 WL 980575, at *2 (D.N.J. Mar. 13, 2014) (stating that "negligent hiring claims can arise *even for* actions that are outside of the scope of employment" but not limiting such claims to those actions); *Capers v. FedEx Ground*, No. 02-5352, 2012 WL 2050247, at *3 (D.N.J. June 6, 2012) ("A cause of action for negligent hiring or supervision imposes liability against an employer where the employee has committed an intentional tort *even where* that tort occurs outside the scope of employment."). And the elements of a negligent supervision or retention claim do not limit—or even discuss—the scope of employment in evaluating that claim. Accordingly, Defendant's second argument also fails.

*Third*, Defendant notes that these torts are generally reserved for instances where an employer knew that an employee could be "violent or aggressive," and the employee then causes "physical harm" or engages in other "criminal activity." (Def. Mov. Br. at 31; Def. Reply Br. at 19). But the case on which Defendant relies for the proposition that "these torts are generally reserved for instances where an employer knew that an employee could be 'violent or aggressive'" (Def. Mov. Br. at 31), goes on to say "or that the employee might engage in injurious conduct toward third persons." *Lingar v. Live-In Companions, Inc.*, 692 A.2d 61, 65 (N.J. Super. Ct. App. Div. 1997). So, while Defendant's general assertion may be true, it is nevertheless an insufficient basis to dismiss Plaintiff's claim. As such, Defendant's third argument also fails.

*Finally*, the Court turns to Defendant's argument that the claim of negligent supervision and retention is barred by the economic loss doctrine, which "prohibits plaintiffs from recovering in tort economic losses that are alleged to flow from a contract." (Def. Mov. Br. at 32).

"Whether a negligence claim is barred by the economic loss doctrine turns on whether the party has asserted an independent duty apart from that imposed by the contract." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *3-4 (D.N.J. Feb. 24, 2016); *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law").  An independent duty does not exist unless the duty is "separate and apart" from the contractual obligations between the parties.  *Saltiel,* 788 A.2d at 279; *see also Perkins v. Washington Mut., FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009) (holding that the economic loss doctrine barred the mortgagor's negligence claim against a mortgagee bank because the bank did not owe the mortgagor a duty outside of their contractual relationship); *see also Minerals & Min. Corp. v. Citicorp N. Am., Inc.,* 736 F. Supp. 587, 597 (D.N.J. 1990) (dismissing claims sounding in tort that also related to breach of contract action because defendant did not owe a duty of care separate and apart from the contract between the parties).

Here, Plaintiff has not alleged any independent duty owed to Davis that would give rise to his negligent supervision and retention claim, nor has he pointed to any New Jersey or federal law indicating that an insurance company owes insureds a general duty of care.  *See, e.g.*, *Ramos v. Wells Fargo Bank, N.A.*, No. 16-0880, 2016 WL 6434423, at *12 (D.N.J. Oct. 31, 2016) (dismissing plaintiffs' negligence claims because they failed to "point[] to any New Jersey or federal law indicating that mortgage lenders owe borrowers a duty of care as a general matter").  And rather than asserting an independent duty, Plaintiff's opposition focuses on cases with surviving fraud claims (that are not at issue here)[17] or out-of-District authority decided under laws of different states.[18]

---

[17]    *See, e.g.*, *Alloway v. General Marine Industries, L.P.*, 695 A.2d 264, 274 (N.J. 1997) (discussing claims under "fraud or unconscionable conduct"); *Perth Amboy Iron Works, Inc., v. American Home Assurance Co.*, 571 A.2d 294, 294 (N.J.1990) (allowing simultaneous fraud and contract claims).

[18]    *See, e.g.*, *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1138 (10th Cir. 2005); *Advanced Marine Techs., Inc. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 385 (S.D.N.Y. 1998).

Because Plaintiff has not set forth any facts for the Court to infer that Bankers owes him an independent duty to sustain this claim, Count VI must be dismissed. Such dismissal will be *without prejudice* to Plaintiff's right to amend this claim.[19]

### G.  Count VII: Quasi-Contract

#### i.  *The Parties' Arguments*

Defendant argues that Davis's quasi-contract claim must be dismissed because "New Jersey law does not recognize a claim for unjust enrichment where a valid contract exists between the parties relating to the subject matter of the claim." (Def. Mov. Br. at 33).

Plaintiff concedes that "an unjust enrichment claim may be superfluous to a contract claim," but contends that the claim should not be dismissed at this stage. (Pl. Opp. Br. at 35).

#### ii.  *Analysis*

To state a claim under a quasi-contract theory of unjust enrichment, a plaintiff must allege that "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, No.06-3266, 2007 WL 1101443, at *6 (D.N.J. Apr. 11, 2007) (citing *Wanaque Borough Sewerage Auth. v. West Milford,* 677 A.2d 747, 752 (N.J. 1996)). "A claim of unjust enrichment will not stand when an express contract exists concerning the identical subject matter." *Spano v. JP Morgan Chase Bank, NA*, 521 F. App'x 66, 70 (3d Cir. 2013). "Although litigants may plead alternative and inconsistent claims, courts have on numerous occasions dismissed under Rule 12(b)(6) unjust enrichment claims that relate to the same subject matter as valid contracts." *U.S. Land Res. LP, v. JDI Realty LLC*, No. 08-1532, 2009 WL 2488316, at *12 (D.N.J. Aug. 12, 2009) (listing numerous cases).

---

[19]     While the Court does not find that amendment would be inequitable, the Court is skeptical of Plaintiff's ability to state a plausible negligent supervision and retention claim. It therefore cautions Plaintiff to only amend his claim to the extent Plaintiff believes that the facts support allegations giving rise to the reasonable inference that Defendant owed an independent duty apart from that imposed by the Bankers Policy. The Court cautions Plaintiff that any future dismissal of this claim will be *with prejudice*.

The Third Circuit has approved of dismissing unjust enrichment claims where, as here, a plaintiff also seeks relief on a contract.  It's decision in *Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 F. App'x 944 (3d Cir. 2004) is instructive.  There, as here, the insurer issued a policy with a free-look provision and the insured failed to exercise his right to cancel, hence "indicating an intent to be bound by the contract."  *Estate of Gleiberman*, 94 F. App'x at 946-47.  Because the policy was "valid and enforceable," the Third Circuit held, "the District Court correctly dismissed [on a 12(b)(6) motion] the claims for unjust enrichment and restitution."  *Id*. at 947.

Here, the Court has already determined that the Bankers Policy is effective, and thus valid and enforceable.  *See supra* at 8-10.  Because the Bankers Policy is an express contract concerning the identical subject matter of Plaintiff's allegations, the Court must dismiss Plaintiff's unjust enrichment claim.  *See U.S. Land Res. LP*, 2009 WL 2488316, at *12.  Accordingly, Count VII of the SAC is dismissed *with prejudice*.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss.  Counts I, II, III, IV, V, and VII are dismissed *with prejudice* and Count VI is dismissed *without prejudice*.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
